UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUTH IYUN,

                Plaintiff,                Case No. 06-13652

vs.                                HONORABLE PAUL V. GADOLA
                                HONORABLE STEVEN D. PEPE

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
========================/

**Report and Recommendation**

**I.      Background**

Ruth Iyun brought this action under 42 U.S.C. § 405(g) for judicial review of the

Commissioner's final decision denying his application for Disability Insurance Benefits (DIB)

under Title II of the Social Security Act. Both parties have filed motions for summary judgment,

which have been referred pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the following

reasons, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED** and

Defendant's Motion for Summary Judgment be **GRANTED**.

      **A.      Procedural History**

Plaintiff filed an application for a period of disability and DIB, on September 7, 2004,

alleging that she became disabled on January 8, 2004, due to surgery on her left shoulder (R. 47-

49, 88). Plaintiff's application was denied initially and following a hearing before

1

Administrative Law Judge ("ALJ") James F. Prothro, II. (R. 23-25, 13-21). The Appeals Council denied Plaintiff's request for review on June 16, 2006.

### B.      Background Facts

#### 1.      Plaintiff Testimony

On June 27, 2005, Plaintiff appeared with counsel and testified before ALJ Prothro. Plaintiff testified that she was 54 years old, separated from her husband, and currently lives alone (R.265-66). She had three years of college (R. 266). Plaintiff fell down concrete stairs at work in May 2003, injuring her left shoulder (R. 270). After the accident, she performed light duty assisting a tool setter, and was told, in January 2004, by her employer that they had no work for her (R. 267, 269). She claims that she became disabled as of January 2004 (R. 267).

Plaintiff testified that since her injury, she was required to return to her employer to see if work was available for someone with her work restrictions (R. 268).

Plaintiff re-injured her shoulder on May 17, 2004, while doing physical therapy exercises (R. 271-72). Plaintiff has had two shoulder surgeries under general anesthetic to remove adhesions (R. 272-73). Following surgery to her left shoulder she "was able to get more range" of motion (R. 273).

Plaintiff has benefitted from physical therapy (R. 275). She explained that "I got some of my range back and I was able to move it. And you know, I'm still able to move it and everything. I don't feel any slipping or anything" (R. 274). Plaintiff testified can reach with her left arm but not over her shoulder due to pain (R. 276).

Plaintiff has no difficulty walking, standing or sitting (R.275). She can drive without any problems and can babysit three of her five grandchildren at a time (R. 277). Plaintiff can lift 15 to 20 pounds and has no problems with her hands (R. 275-77). She lifts things with both arms,

using her left arm to help support the object while mainly lifting with her right hand (R. 279-80).

Plaintiff has problems pushing or pulling her vacuum cleaner.  Plaintiff estimated that, as of

January 2005 through the hearing date, her function was 80% improved following her September

2004 surgery (R. 281).  Plaintiff does her home exercises 2-3 times per week (R. 281-82).

## 2. Medical Evidence

Plaintiff sought emergency room treatment on May 1, 2003, for an injury to her left arm

from her fall (R. 119-121). The examining physician assessed Plaintiff's condition as left arm

strain (R. 120, 121).  A Notice of Dispute was filed by Plaintiff's employer with the Michigan

Bureau of Worker's Disability Compensation on May 13, 2003 (R. 222).  The employer noted

the reason for the dispute was that Plaintiff refused to accept a light duty job offer within her

restrictions (R. 222).

On May 21, 2003, Plaintiff sought follow-up care for left shoulder pain  from Dr. de Bari,

an orthopedic surgeon (R. 133).  Plaintiff advised Dr. de Bari that, after the fall, she returned to a

job that requires only use of her right hand. Plaintiff acknowledged that she had been

experiencing less pain in the last few days as she was really not doing anything with her left

upper extremity.  Dr. de Bari reviewed an X-ray that showed an anterior dislocation of the left

shoulder and decided to go ahead with surgery.  Physical examination showed forward flexion

and abduction at approximately 45 degrees with a great deal of pain (R. 134).  Dr. de Bari

performed closed reduction of anterior dislocation of the left shoulder on May 21, 2003 (R. 131).

On May 27, 2003, Dr. de Bari opined that "work may be resumed" in 2 months (R. 181).

June 5, 2003, X-rays showed satisfactory alignment of the shoulder (R. 167).  Dr. de Bari

noted that it seemed to be well reduced and the reduction has been maintained.  He planned to

see Plaintiff in 4 weeks and start strengthening exercises of her left shoulder at that time.

Treatment notes from June 30, 2003, indicate that Plaintiff complained of a lot of pain in the left shoulder (R. 166). She had significant limitation of motion. Dr. de Bari recommended physical therapy.

On July 17, 2003, Plaintiff told Dr. de Bari that she was getting better with her left shoulder (R. 165). She began physical therapy on July 16, 2003.

On August 28, 2003, Plaintiff continued to complain of some weakness and pain in the left shoulder, especially at night. Dr. de Bari noted that Plaintiff finished physical therapy, but he thought she needed to go back. He also noted that she may be developing adhesive capsulitis, and if she had no improvement, he would recommend a manipulation under anesthesia (R. 164). Dr. de Bari on August 28, 2003, continued the one-handed work restriction for 6 weeks (R. 208).

On October 14, 2003, Dr. de Bari indicated that Plaintiff was "ok" to exercise at Curves, and on October 16, 2003, he continued one handed work for another 6 weeks (R. 238-39). He diagnosed adhesive capsulitis of the left shoulder; status post chronic anterior dislocations (R. 239).

On October 21, 2003, in addition to the adhesive capsulitis of the left shoulder Dr. de Bari considered an underlying rotator cuff tear (R. 163). He ordered an MRI of Plaintiff's left shoulder to rule this out.

On November 3, 2003, an MRI of Plaintiff' left shoulder showed intrasubstance tear, but Dr. de Bari continued to treat Plaintiff for adhesive capsulitis rather than rotator cuff tear (R. 243).

On November 18, 2003, Dr. de Bari continued one-handed work until her next appointment on December 9, 2003 (R. 237).

On December 9, 2003, Dr. de Bari prepared a work restriction form for Plaintiff, indicating that she could return to light duty continuing with present restrictions for 12 more weeks (R. 207). Progress notes, dated December 9, 2003, indicated continuing complaints of problems with the Plaintiff's shoulder and significant limitation of motion as well (R. 162). Dr. de Bari opined that shoulder manipulation was indicated.

On January 23, 2004, fifteen days after Plaintiff's alleged onset of disability, Dr. de Bari performed injection and manipulation of Plaintiff's left shoulder to treat her adhesive capsulitis (R. 122-23).

On January 27, 2004, Dr. de Bari anticipated she could return to work March 8, 2004, with restrictions (R. 178).

On February 18, 2004, Plaintiff recounted improvement with physical therapy (R. 159). Dr. de Bari's visual examination of the shoulder was essentially normal with improved range of motion. He discussed range of motion exercises and physical therapy strengthen her shoulder (R. 159-60).

On March 18, 2004, Plaintiff was examined by Dr. de Bari 8 weeks after her left shoulder manipulation and injection. Plaintiff's shoulder had no signs of any erythema, ecchymosis, deformity or swelling. The range of motion was "almost completely full and unrestricted." There was a slight restriction at the end range of flexion and abduction which is a significant improvement in range of motion. There was mild tenderness to palpation on the anterior portion of left shoulder with less pain, discomfort and improved strength (R. 158). Her shoulder strength was 4 out of 5 for flexion, abduction, and external rotation. Dr. de Bari recommended Plaintiff continue her home exercise program for additional strengthening, and discontinue her range of motion exercises. He wanted to see Plaintiff again in 2 months.

On May 20, 2004, Plaintiff returned to Dr. de Bari, following an emergency room visit after dislocating her shoulder (R. 155). Plaintiff had felt her shoulder move out of joint while doing her exercises. An orthopedist at her home emergency room in Tennessee reduced her dislocated shoulder and gave her medications and a sling. Dr. de Bari noted that, although the reduction for Plaintiff's dislocation had been successful, she had increased pain in her shoulder. He told Plaintiff to remain off work for four weeks and slowly progress with range of motion exercises to prevent another "frozen shoulder." He instructed her to use ice, her sling, and pain medications, and hoped to avoid a second surgery (R. 156).

On July 20, 2004, Dr. de Bari recommended surgery in light of continued left shoulder instability (R. 153-54). On September 1, 2004, Dr. de Bari performed Bankart anterior reconstruction of the left shoulder (R. 144-47).

On September 23, 2004, Dr. de Bari noted that September 1, 2004, surgery revealed some fraying of the anterior shoulder capsule (R. 150). Plaintiff had minimal pain doing pendulum exercises using the sling. Physical examination showed good passive range of motion, and "good range of motion to about 63 of flexion before pain limits her any further." Dr. de Bari was planning on follow up examination in three weeks with formal physical therapy to begin then.

On October 20, 2004, Plaintiff reported that while still somewhat sore, she was doing quite a bit better since her last visit (R. 149). She was doing gentle range of motion activities and could now lift her are to about shoulder level. Left shoulder strength was diminished compared to her right shoulder. Dr. de Bari recommended physical therapy with a follow-up examination in 6 to 8 weeks.

On December 1, 2004, Plaintiff reported that physical therapy had progressed well (R. 258). She still had some soreness, when she elevated her arm above her head, but this as well as her strength, were improving. Plaintiff was fairly pleased as to her progress "thus far." Physical examination revealed improvement in range of motion though Plaintiff's strength was still "significantly" reduced. The plan was for 6 more weeks of physical therapy to regain a full range of motion and improve strength.

### 4.     Vocational Evidence

Vocational Expert ("VE") Michelle Ross characterized Plaintiff's prior employment as a machine operator was medium exertional and unskilled, and her work as an assembler was light exertional and unskilled (R. 283).

VE Ross was asked by ALJ Prothro to assume a hypothetical individual who is 54 with three years of college education, the same past work experience as the Plaintiff and the following limitations: able to walk, sit and stand in positions to do regular work activities, lifting is limited to 15 pounds using both arms, and lifting overhead causing pain to the left upper extremity, thus overhead lifting with the left arm (R. 284). VE Ross testified that such a person could not perform any of Plaintiff's past work. Yet, there would be jobs in the national economy for such a person including: 4,800 line attendant jobs in the state, 18,500 hostess jobs and 9,200 security guard jobs in the region.

ALJ Prothro posed a second hypothetical person with no exertional limitations, but limited regular use of the right but not the left. VE Ross responded that such an individual could not return to any of the Plaintiff's past relevant work, but could perform the jobs she listed in response to the prior hypothetical as well as work at the sedentary exertional level.

7

ALJ Prothro asked whether such hypothetical individual use of the left upper extremity limited to no strenuous lifting could perform Plaintiff's past relevant work (R. 285). VE Ross testified that such an individual would be able to perform Plaintiff's past work as an assembler. Plaintiff's attorney requested clarification of the last hypothetical and had no questions for VE Ross (R. 286).

**4.        ALJ  Prothro's Decision**

In a decision dated January 11, 2005, ALJ Prothro determined that Plaintiff met the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through December 31, 2009 (R. 20). He found that Plaintiff has not engaged in substantial gainful activity since January 2, 2004, the date of the alleged onset of disability.

Plaintiff's impairments caused by shoulder surgeries and hypertension were deemed "severe," but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, and Regulation No. 4, and ALJ Prothro found Plaintiff's allegations regarding her limitations not wholly credible (R. 21).

ALJ Prothro found Plaintiff to have residual functional capacity ("RFC") to perform light work activity that involves no exertional limitations except for use of the left upper extremity to a limited extent and no strenuous lifting with the left upper extremity. Plaintiff's past work as an assembler did not involve activities precluded by her RFC, and she is not unable to perform such past work.

As a result, ALJ Prothro determined that claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision. 20 C.F.R. §404.1520(f).

**II.        Analysis**

8

## A.    Standards of Review

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and Human Servs.*, 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence has been defined as "[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Mullen v. Brown*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

## B.    Factual Analysis

In her motion for summary judgment, Plaintiff argued that ALJ Prothro erred as a matter of law failing to properly evaluation the medical records of evidence and thereby forming an inaccurate hypothetical that did not accurately portray Plaintiff's impairments (Dkt. # 8, p. 6).

### 1.    *ALJ's Hypothetical*

If the Commissioner seeks to rely on VE testimony to carry his burden of proving the existence of a substantial number of jobs that plaintiff can perform, other than his past work, the testimony must be given in response to a hypothetical question that accurately describes plaintiff in all significant, relevant respects. A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which the plaintiff can perform. See, e.g., *Varley v. Secretary of HHS*, 820 F.2d 777, 779 (6th Cir. 1987) (hypothetical question must accurately portray claimant's "individual physical and mental impairments");

*Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987) ("The question must state with precision the physical and mental impairments of the claimant."); *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir. 1975); *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975).

Because Plaintiff turned 55 on January 25, 2006 (R. 47) she would be deemed disabled under Grid Rule 202.04 as of that date unless there is sufficient evidence to determined she could perform one of her past jobs. VE Ross testified that such an individual would be able to perform Plaintiff's past work as an assembler based on the third hypothetical that allowed no strenuous lifting..

Plaintiff claims that the ALJ's determination rests upon an incorrect evaluation of the medical record and ignores Dr. De Bari's March 21, 2005, opinion that Plaintiff is permanently disabled from any work (R. 259). Yet, even that report form notes Plaintiff's shoulder impairment was improved and Plaintiff was a suitable candidate for rehabilitation. ALJ Prothro's decision was based on the medical record as well as Plaintiff's responses on the record and her listing of daily activities. The medical records note that Plaintiff had recovered 80% of her functional left shoulder capability and resisted movement (R. 19, 257). Plaintiff acknowledged 80% return of her motion function (R. 281) and the record shows a similar recovery in strength. The most recent medical examination notes also show that Plaintiff had about 140 degrees of flexion and that "her strength was slightly diminished at 4 of 5 for resisted flexion and neurovascularly." Dr. de Bari noted that she is "progressing very well."

Plaintiff's responses on the record and her daily activities also support the ALJ's decision. Plaintiff claimed to be able to lift up to 15 or 20 pounds and can use her left arm to balance an object while mainly using her right hand to lift the object (R. 275, 279-80). She further stated that she babysits her grandchildren and also likes to fish. While medical opinions

of treating sources are given substantial weight, conclusory statements of treaters on total disability, a subject reserved to the Commissioner for determination, are not medical opinions under the regulations, and thus not accorded enhanced status. 20 C.F.R. 404.1527(e)(2).

VE Ross determined the worker in the third hypothetical question could perform past assembly work (R. 285), and this testimony was within minutes offered after the Plaintiff described the need to load gears onto a receptacle above shoulder level (R. 278-79). The ALJ may also have considered the fact that Plaintiff was still on extended disability at GM and not yet qualified for permanent disability (R. 280). Thus a reasonable fact-finder could conclude Plaintiff could perform non-strenuous lifting up to 15 pounds with her left arm.

Given that the ALJ effectively addressed all of Plaintiff's substantial limitations in his third hypothetical and that Plaintiff could find other work in the region, it is recommended that ALJ Prothro's hypothetical question not be overturned, and the ALJ's decision upheld.

## IV.    Recommendation

For the reasons stated above, it is Recommended that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir.

1991); *Smith v. Detroit Fed'n of Teachers Local, 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this

Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections,

the opposing party may file a response.  The response shall be not more than twenty (20) pages

in length unless by motion and order such page limit is extended by the Court.  The response

shall address specifically, and in the same order raised, each issue contained within the

objections.

October 26, 2007                              s/Steven D. Pepe
Ann Arbor, Michigan                      United States Magistrate Judge


## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2007, I electronically filed the foregoing paper with the clerk of the Court using the ECF system which will send notification of such filing to the following: James A. Brusnon, Mikel E. Lupisella, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: Social Security Administration - Office of the Regional Counsel, 200 W. Adams, 30th. Floor, Chicago, Il 60606

s/James P. Peltier
James P. Peltier
Courtroom Deputy Clerk
U.S. District Court
600 Church St.
Flint, MI 48502
810-341-7850
pete_peltier@mied.uscourts.gov